## SUMMONS ISSUED

# CV  12  2708

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

BARBARA MARCIANO, Individually and
On Behalf of All Others Similarly Situated,

                Plaintiff,

      vs.

SCHELL & KAMPETER, INC. d/b/a
DIAMOND PET FOODS, DIAMOND PET
FOODS INC., and COSTCO WHOLESALE
CORPORATION,

                Defendants.

———————————————————— x

: Civil Action No.
:
: CLASS ACTION COMPLAINT FOR
: NEGLIGENCE, BREACH OF EXPRESS
: WARRANTY, BREACH OF IMPLIED
: WARRANTY, STRICT PRODUCT
: LIABILITY, UNJUST ENRICHMENT,
: VIOLATIONS OF THE NEW YORK
: GENERAL BUSINESS LAW SECTIONS
: 349 AND 350
:
: JURY TRIAL DEMAND
:
:
:
:

**FILED**
**IN CLERK'S OFFICE**
**U S DISTRICT COURT E.D N Y**

★  MAY 3 0 2012  ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J

TOMLINSON, M

Plaintiff Barbara Marciano ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Schell & Kampeter, Inc., a Missouri corporation d/b/a Diamond Pet Foods, Diamond Pet Foods, Inc., a Missouri corporation, (collectively, "Diamond") and Costco Wholesale Corporation ("Costco"), a Washington corporation (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Diamond is a leading North American manufacturer of pet food products ("Pet Food") sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Costco, Wal-Mart, Publix, Target, PetSmart, Inc., and other large retail chains.  Diamond produces millions of bags of Pet Food annually.

2.      Diamond designed, manufactured, marketed, advertised and warranted its Pet Food as fit for consumption by domesticated pets and free from defects. As alleged herein, the Pet Food was not fit for its stated or intended purpose.

3.      In or about April 2012, the U.S. Food and Drug Administration (the "FDA"), in collaboration with the Centers for Disease Control (the "CDC") and other state and local officials, investigated a multi-state outbreak of Salmonella Infantis ("Salmonella") infections.  The FDA's investigation was prompted by Department of Agriculture officials from various states who reported they discovered Salmonella in unopened and sealed packages of Diamond brands.[1]

---

[1]      *See* http://www.fda.gov/Food/FoodSafety/CORENetwork/ucm302904.htm (last visited May 29, 2012).

- 1 -

4.      The FDA's investigation revealed that a total of 14 people from nine different states were infected by the outbreak.[2] Moreover, the investigation revealed that these individuals were exposed to Diamond brands.[3]

5.      Subsequently, the FDA's Center for Veterinary Medicine ("FDA CVM") detected a strain of the Salmonella virus at Diamond's manufacturing plant in Gaston, South Carolina. On or about April 7, 2012, in response to the FDA CVM findings, Diamond shut down its operations at that plant. The FDA, following its April 12, 2012 through April 20, 2012 investigation, made four observations related to unsanitary and unsafe conditions.[4]

6.      Diamond produces numerous brands under its own name and several "private label" brands for companies such as Apex Pet Foods, Inc. ("Apex"), Costco and Canidae Corporation ("Canidae").

7.      Starting on April 6, 2012, Diamond initiated several recalls of its Pet Food due to Salmonella. In all, Diamond recalled nine brands of Pet Food. Additionally, Apex and Canidae issued recalls for Pet Foods sold under their names.

8.      On April 11, 2012, Plaintiff purchased Kirkland Signature Nature's Domain Salmon Meal & Sweet Potato Formula for Dogs ("Kirkland Signature Nature's Domain"), one of a series of brands manufactured by Diamond and one of the nine recalled brands of Pet Food.

---

[2]      *See* http://www.cdc.gov/salmonella/dog-food-05-12/index.html (last visited May 29, 2012).

[3]      *See id.*

[4]      *See* http://www.fda.gov/downloads/AboutFDA/CentersOffices/OfficeofGlobal RegulatoryOperationsandPolicy/ORA/ORAElectronicReadingRoom/UCM304252.pdf (last visited on May 18, 2012).

9.      Plaintiff subsequently fed only Kirkland Signature Nature's Domain to her three dogs "Benji," "Pepsi" and "Sandy."

10.      Since ingesting Kirkland Signature Nature's Domain, Benji became ill and passed away. Pepsi has experienced lethargy. Sandy experienced no noticeable symptoms as a result of eating the Pet Food.

11.      Accordingly, this class action lawsuit is brought on behalf of Plaintiff and other similarly situated individuals who purchased tainted pet food and pet food products produced, manufactured, distributed, redistributed, marketed, advertised, labeled, handled, supplied, sold and/or resold by Defendants (the "Class").

12.      Not only did Plaintiff and the Class not receive the benefit of their bargain when they purchased Defendants' tainted pet food and pet food products that they would not otherwise have purchased, but many Class members also suffered financial or actual damage.

## PARTIES

13.      At all relevant times, Plaintiff was a resident of Nassau County, New York. On April 11, 2012, Plaintiff purchased Kirkland Signature Nature's Domain from Costco in Westbury, Nassau County, New York. Plaintiff's dogs consumed Defendants' recalled Kirkland Signature Nature's Domain from April 11, 2012 to the end of April 2012.

14.      Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods ("Schell & Kampeter") is a Missouri corporation. Schell & Kampeter is authorized to conduct business, and does conduct business, in the State of New York.

15.      Defendant Diamond is a Missouri corporation with its principal place of business located at 103 North Olive Street, Meta, Missouri 65058. Diamond is a wholly-owned subsidiary of Defendant Schell & Kampeter, and both companies share a number of common senior managing officers. Diamond manufactures dry and canned food for dogs and cats, as well as biscuits for dogs.

- 3 -

Diamond serves top breeders, kennel owners, sporting enthusiasts, and family pet owners worldwide. Diamond produces numerous brands under its own name and several "private label" brands for companies such as Apex, Costco and Canidae.

16.     Defendant Costco is a Washington corporation with its principal place of business located at 999 Lake Drive, Issaquah, Washington 98027. Costco is authorized to conduct business, and does conduct business, in the State of New York. Costco operates an international chain of membership warehouses that carry merchandise at substantially lower prices than are typically found at conventional wholesale or retail sources. "Kirkland Signature" is Costco's store brand or "private label." "Kirkland Signature" is found exclusively at Costco's website and Costco warehouses and is trademarked by the company.

**JURISDICTION AND VENUE**

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act of 2005, and over supplemental state law claims pursuant to 28 U.S.C. §1367.

18.     Venue properly lies in this District pursuant to 28 U.S.C. §1391(a), because Plaintiff resides and Defendants reside, are found, have their principal place of business, have an agent, or have transacted substantial business within the Eastern District of New York within the meaning of 28 U.S.C. §1391(a) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in the Eastern District of New York. Specifically, Defendants marketed and sold their Pet Food throughout the State of New York, including throughout this District, and Plaintiff, as well as other members of the Class, purchased Defendants' tainted Pet Food from retail outlets located within this District.

- 4 -

## SUBSTANTIVE ALLEGATIONS

### Defendants and Their Tainted Pet Food

19.     Diamond is in the business of manufacturing, producing, distributing, and/or selling Pet Food under various brand names.  Indeed, Diamond produces several different Pet Food products for themselves, as well as for private labels, each year, including the following brand names:[5]

- Chicken Soup for the Pet Lover's Soul®

- Country Value®

- Diamond®

- Diamond Naturals®

- Premium Edge®

- Professional®

- 4Health®

- Taste of the Wild®

- Apex®

- Kirkland Signature®

- Canidae®

20.     Diamond sells its Pet Food throughout the United States, and a substantial portion of Diamond's Pet Food is sold throughout the State of New York.  Upon information and belief, Diamond has sold, either directly or indirectly, millions of units of defective Pet Food and Pet Food products throughout the United States, including throughout the State of New York.

21.     Upon information and belief, Diamond produces, on average, 260,000 tons (approximately 2.8 million bags) of Pet Food per year and has annual revenues of $39.2 million.

---

[5]     *See* http://diamondpetrecall.com/ (last visited May 29, 2012).

22.     Beginning in or around April 2012, the FDA, in collaboration with the CDC and other state and local officials, investigated a multi-state outbreak of Salmonella infections. The FDA became involved when they were contacted by Department of Agriculture officials from various states who reported they discovered Salmonella in unopened and sealed packages of Diamond's brands.[6]

23.     The investigation revealed that a total of 14 people infected by the outbreak were reported from nine states. The investigation uncovered that these individuals were exposed to Diamond's brands.

24.     Subsequently, the FDA CVM identified a strain of Salmonella at Diamond's plant in Gaston, South Carolina. On April 7, 2012, and in response to the FDA CVM findings, Diamond shut down its operations at the Gaston plant.[7]

25.     The FDA, in conducting an inspection of the Gaston plant from April 12, 2012 through April 20, 2012, observed the following conditions:

(a)     *"All reasonable precautions are not taken to ensure that production procedures do not contribute contamination from any source."* Specifically, no microbiological analysis was conducted or there was no assurance that animal fat would not introduce pathogens into

---

[6]     *See* http://www.fda.gov/Food/FoodSafety/CORENetwork/ucm302904.htm (last visited May 29, 2012).

[7]     This is not Diamond's first recall of contaminated Pet Food products from its Gaston, South Carolina factory. On or about December 20, 2005, Diamond discovered aflatoxin in a product manufactured at its Gaston facility. In that instance, Diamond was forced to recall nine products in 23 states. An FDA investigation into the aflatoxin contamination determined that Diamond was not conforming to FDA testing guidelines. *See* http://www.fda.gov/Safety/Recalls/default.htm (last visited May 29, 2012).

the product.  Additionally, Diamond's sampling procedure did not account for potential adulteration after sampling or during storage.

(b)    *"Failure to provide hand washing and hand sanitizing facilities at each location in the plant where needed."*  Specifically, there were no facilities for hand washing or hand sanitizing in production areas where there was direct contact with exposed finished product.

(c)    *"Failure to maintain equipment, containers and utensils used to convey, hold, and store food in a manner that protects against contamination."*  Specifically, certain paddles in the conveyer had gouges and cuts.  The damaged areas were potential harbors for microorganisms and were difficult to clean and sanitize.

(d)    *"Failure to maintain equipment so as to facilitate cleaning of the equipment."*  Specifically, Diamond utilized cardboard, duct tape and other non cleanable materials on equipment.  Residue was found on these surfaces.  Additionally, foam gaskets around access doors to the bucket elevators were in poor condition, and exhibited an accumulation of residue and dust.[8]

[Emphasis added.]

26.    On April 6, 2012, Diamond recalled Diamond Naturals® Lamb Meal & Rice.[9]

27.    On April 26, 2012, Diamond expanded the recall to include Chicken Soup for the Pet Lover's Soul®.[10]

---

[8]    *See* http://www.fda.gov/downloads/AboutFDA/CentersOffices/OfficeofGlobal RegulatoryOperationsandPolicy/ORA/ORAElectronicReadingRoom/UCM304252.pdf (last visited on May 29, 2012)

[9]    *See* http://www.fda.gov/Safety/Recalls/ucm299606.htm (last visited May 29, 2012).

[10]    *See* http://www.fda.gov/Safety/Recalls/ucm302137.htm (last visited May 29, 2012).

28.     On April 30, 2012, Diamond again expanded the recall to include Diamond® Puppy Formula.[11]

29.     On May 4, 2012, Apex announced a recall of Apex Dog Food manufactured by Diamond on January 24, 2012.[12]

30.     On May 5, 2012, Diamond vastly expanded the recall, this time including all products of the following brands manufactured between December 9, 2011 and April 7, 2012: Chicken Soup for the Pet Lover's Soul®; Country Value®; Diamond®; Diamond Naturals®; Premium Edge®; Professional®; 4Health®; and Taste of the Wild®. This recall also included the Kirkland Signature Brand ingested by Plaintiff's dogs and manufactured by Diamond during the same time period.[13]

31.     Also on May 5, 2012, Canidae announced a recall of its Pet Food that was manufactured by Diamond between December 9, 2011, and January 31, 2012.[14]

32.     Most recently, on May 21, 2012, Diamond expanded the recall to include its Diamond Naturals® Small Breed Adult Dog Lamb & Rice Formula dry dog food manufactured on August 26, 2011.[15]

33.     In total, Diamond Pet Foods recalled nine brands of Pet Food – eight brands under the Diamond label and one under the Kirkland Signature label. Additionally, two other companies – Apex and Canidae – issued recalls for its Pet Food produced or manufactured by Diamond. The

---

[11]    *See* http://www.fda.gov/Safety/Recalls/ucm302514.htm (last visited May 29, 2012).

[12]    *See* http://www.fda.gov/Safety/Recalls/ucm303061.htm (last visited May 29, 2012).

[13]    *See* http://www.fda.gov/Safety/Recalls/ucm303034.htm (last visited May 29, 2012).

[14]    *See* http://www.fda.gov/Safety/Recalls/ucm303063.htm (last visited May 29, 2012).

[15]    *See* http://www.fda.gov/Safety/Recalls/ucm304917.htm (last visited May 29, 2012).

brands and labels of recalled pet food described in paragraphs 26-32 are collectively referred to as the "Recalled Pet Food."

## Factual Allegations Related to Plaintiff

34. In April 2012, Plaintiff purchased Kirkland Signature Nature's Domain from Costco in Westbury, New York.

35. Over the course of approximately a month, Plaintiff fed Kirkland Signature Nature's Domain to her dogs. Kirkland Signature Nature's Domain was the only source of food for the Plaintiff's dogs during that time. Benji became ill and passed away. Pepsi experienced lethargy. Sandy experienced no noticeable symptoms as a result of eating the Recalled Pet Food.

36. Prior to the recall, Defendants never warned Plaintiff or any other member of the Class that the Recalled Pet Food would cause their pets to have health problems (and, worse, potentially die).

37. As a result of their purchases of the Recalled Pet Food, as set forth above, Plaintiff and other members of the Class have suffered and will suffer damages, including, but not limited to:

    (a)    the cost of purchasing a safe, replacement product, including sales tax or a similar tax;

    (b)    the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise;

    (c)    the consequential and incidental damages, such as the loss and disability of their household pets; and

    (d)    the cost of returning the Pet Food to the store or the price of postage to secure a refund offered by Defendants.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2),

and (b)(3) individually and as a class action on behalf of the following proposed classes:

*National Class: All persons and entities in the United States who purchased the
Recalled Pet Foods.*

*New York Class: All persons and entities in the State of New York who purchased
the Recalled Pet Foods.*

39.     Upon completion of discovery with respect to the scope of the Class, Plaintiff

reserves the right to amend the Class definition.  Excluded from the Class are Defendants, their

parents, subsidiaries and affiliates, directors and officers, and members of their immediate families.

Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of

relationship to the Court and its spouse, and the spouses of all such persons.

40.     Numerosity: The Class is so numerous that joinder of all individual members is

impracticable.  While the exact number and identities of members of the Class are unknown to

Plaintiff at this time and can only be ascertained through appropriate discovery, upon information

and belief, Plaintiff alleges that the Class is comprised of thousands of individual members

geographically disbursed throughout the United States.  The number of Class members and their

geographical disbursement renders joinder of all individual members impracticable if not impossible.

41.     Commonality: There are questions of fact and law common to members of the Class

that predominate over any questions affecting solely individual members including, *inter alia*, the

following:

(a)     whether Defendants manufactured, marketed and/or sold Pet Food that was

tainted by the Salmonella virus;

(b)     whether Defendants advertised, represented, or held the Pet Food out as a

product that was safe for consumption by consumers' pets;

- 10 -

(c)     whether Defendants expressly warranted the Pet Food as safe for consumption by consumers' pets;

(d)     whether Defendants implicitly warranted the Pet Food as safe for consumption by consumers' pets;

(e)     whether Defendants intended or foresaw that Plaintiff, Class members, or others would feed the Pet Food to their pets;

(f)     whether Defendants recalled the Pet Food;

(g)     whether Defendants were negligent in manufacturing and/or processing the Pet Food;

(h)     whether using the Pet Food as a reasonable consumer would – to feed domesticated house pets – resulted in loss, injury, or damages to the Class;

(i)     the measure and amount of damages suffered by Plaintiff and the Class;

(j)     whether Defendants' negligence proximately caused damages to Plaintiff and the Class; and

(k)     whether Defendants were unjustly enriched by the conduct complained of herein.

42.     Typicality: Plaintiff's claims are typical of the claims of the other members of the Class in that all such claims arise out of Defendants' conduct in manufacturing, producing and entering into the stream of commerce defective Pet Food, Defendants' conduct surrounding the recall of its Pet Food, and Plaintiff's and Class Members' purchase and use of Defendants' Pet Food. Plaintiff and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiff's claims and those of the Class.

- 11 -

43. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiff has retained competent counsel experienced in litigation of this nature.

44. Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class. Indeed, the predominant issue in this action is whether Defendants' Pet Food is defective and whether that defect caused damages to Plaintiff and the members of the Class. In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this action as a class action.

45. In the alternative, the Class may also be certified under Rule 23(b)(2) because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

46.     The undersigned counsel for Plaintiff and the Class request that the Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Rule 23(g). Undersigned counsel will fairly and adequately represent the interests of the Class, have identified or investigated the Class' potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the Class, and are best able to represent the Class.

**COUNT I**

**Breach of Implied Warranty**

47.     Plaintiff hereby adopts and incorporates by reference every allegation set forth in paragraphs 1-46 above as if fully set forth herein.

48.     Defendants manufactured, marketed, sold or distributed Pet Food.

49.     At the time that Defendants manufactured, marketed, sold, or distributed Pet Food, Defendants knew of the purpose for which the Pet Food was intended and impliedly warranted that their Pet Food was of merchantable quality and safe and fit for ordinary use.

50.     Plaintiff reasonably relied upon the skill, superior knowledge and judgment of the Defendants as to whether the Pet Food was of merchantable quality and safe and fit for ordinary use.

51.     Due to Defendants' wrongful conduct as alleged herein, Plaintiff could not have known about the risks and side effects associated with Defendants' Recalled Pet Food until after ingestion by Plaintiff's pets.

52.     In breach of said implied warranty, the Recalled Pet Food was not of merchantable quality and was not safe or fit for ordinary use.

53.     As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff suffered damages as alleged herein.

## COUNT II

### Breach of Express Warranty

54.     Plaintiff hereby adopts and incorporates by reference every allegation set forth in paragraphs 1-46 above as if fully set forth herein.

55.     Defendants expressly warranted that their Pet Food was safe for consumption by pets.

56.     Defendants' Recalled Pet Food did not conform to this express warranty because the Recalled Pet Food was and is not safe and causes serious harm to pets, including death.

57.     As a direct and proximate result of the breach of said warranties, and as the direct and legal result of the defective condition of Defendants' Recalled Pet Food as manufactured and/or supplied by Defendants, and other wrongdoing of Defendants described herein, Plaintiff was injured and suffered damages.

## COUNT III

### Negligence

58.     Plaintiff hereby adopts and incorporates by reference every allegation set forth in paragraphs 1-46 above as if fully set forth herein.

59.     Defendants owed Plaintiff a duty to only offer for sale safe, non-contaminated Pet Food for consumption by household pets.

60.     Through their failure to exercise due care, Defendants breached this duty by producing, processing, manufacturing, and/or offering for sale contaminated Pet Food in a defective condition that was unhealthy to Plaintiff's pets.

61.     Additionally, Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measures to prevent the Recalled Pet Food from being offered for sale, sold, or fed to pets.

- 14 -

62.     Defendants knew or, in the exercise of reasonable care should have known, that their Pet Food presented an unacceptable risk to the pets of Plaintiff, and would result in damage that was foreseeable and reasonably avoidable.

63.     As a direct and proximate result of Defendants' above-referenced negligence, Plaintiff and the Class have suffered damages.

## COUNT IV

### Strict Product Liability

64.     Plaintiff hereby adopts and incorporates by reference every allegation set forth in paragraphs 1-46 above as if fully set forth herein.

65.     Defendants are producers, manufacturers and/or distributors of Pet Food.

66.     Defendants produced, manufactured, and/or distributed the Recalled Pet Food that was defective in design or formulation in that, when the Recalled Pet Food left the hands of Defendants, the foreseeable risks exceeded the benefits associated with the design or formulation.

67.     Defendants' Pet Food was expected to, and did, reach Plaintiff without substantial change in condition.

68.     Alternatively, the Recalled Pet Food manufactured and/or supplied by Defendants was defective in design and/or formulation in that, when it left the hands of Defendants, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other Pet Food products without concomitant accurate information and warnings accompanying the Recalled Pet Food for Plaintiff to rely upon.

69.     Defendants produced, manufactured and/or distributed the Recalled Pet Food that was defective due to inadequate warning, testing, study, and/or reporting regarding the results of same.

70.     Defendants produced, manufactured and/or distributed the Recalled Pet Food that was defective due to inadequate post-marketing warning or instruction because, after Defendants knew or

- 15 -

should have known of the risk of injury from the Recalled Pet Food, Defendants failed to immediately provide adequate warnings to Plaintiff and the public.

71.     As the direct and legal result of the defective condition of the Recalled Pet Food as produced, manufactured and/or distributed by Defendants, and of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

COUNT V

Unjust Enrichment

72.     Plaintiff hereby adopts and incorporates by reference every allegation set forth in paragraphs 1-46 above as if fully set forth herein.

73.     As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefited from the sale of the Recalled Pet Food while the Recalled Pet Food caused Plaintiff to incur damages.

74.     Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased Pet Food that she expected would be safe and healthy for her dogs and instead has now had to endure the illness of Benji and his eventual death.

75.     By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of Plaintiff, who is entitled to, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

76.     Plaintiff has no adequate remedy at law.

- 16 -

## COUNT VI

### Violations of the New York General Business Law Section 349

77.    Plaintiff hereby adopts and incorporates by reference every allegation set forth in paragraphs 1-46 above as if fully set forth herein.

78.    New York General Business Law ("NYGBL") Section 349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

79.    As alleged fully above, Defendants engaged in deceptive acts and practices within the meaning of the Unfair Trade Practices Statutes, namely, by representing and marketing their Pet Food as a quality and safe product.

80.    As alleged fully above, Defendants engaged in deceptive acts and practices within the meaning of the Unfair Trade Practices Statutes, namely, by manufacturing, distributing, supplying and/or selling defective products to Plaintiff and members of the Class.

81.    By virtue of the foregoing, Defendants have violated NYGBL Section 349.

82.    As a consequence of Defendants' conduct, Plaintiff and members of the Class have suffered injury and ascertainable loss.

## COUNT VII

### Violations of the New York General Business Law Section 350

83.    Plaintiff hereby adopts and incorporates by reference every allegation set forth in paragraphs 1-46 above as if fully set forth herein.

84.    NYGBL Section 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

- 17 -

85.     As alleged fully above, Defendants engaged in false advertising within the meaning of the Unfair Trade Practices Statutes, namely, by representing and marketing their Pet Food as a quality and safe product.

86.     As alleged fully above, Defendants engaged in false advertising within the meaning of the Unfair Trade Practices Statutes, namely, by manufacturing, distributing, supplying and/or selling defective products to Plaintiff and members of the Class.

87.     By virtue of the foregoing, Defendants have violated NYGBL Section 350.

88.     As a consequence of Defendants' conduct, Plaintiff and members of the Class have suffered injury and ascertainable loss.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

(b)     Awarding actual and consequential damages;

(c)     Awarding treble damages;

(d)     Awarding reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the Class;

(e)     Awarding injunctive relief;

(f)     Awarding declaratory relief;

(g)     For pre- and post-judgment interest to the Class, as allowed by law;

(h)     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

- 18 -

(i)   Granting such other and further relief as is just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: May 30, 2012                    ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       SAMUEL H. RUDMAN
                                       MARIO ALBA JR.
                                       MARK S. REICH
                                       WILLIAM J. GEDDISH


                                       SAMUEL H. RUDMAN
                                       58 South Service Road, Suite 200
                                       Melville, NY  11747
                                       Telephone: 631/367-7100
                                       Fax: 631/367-1173
                                       srudman@rgrdlaw.com
                                       malba@rgrdlaw.com
                                       mreich@rgrdlaw.com
                                       wgeddish@rgrdlaw.com

                                       *Attorneys for Plaintiff*

- 19 -