UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————— x
BARBARA MARCIANO, Individually and on :
Behalf of All Others Similarly Situated,   :
                                            :
                          Plaintiff,        :
                                            :
            vs.                             :
                                            :
SCHELL & KAMPETER, INC., et al.,            :
                                            :
                          Defendants.       :
——————————————————— x

Civil Action No. 12-cv-02708-SJF-AKT
**(Consolidated)**

CLASS ACTION

PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF SETTLEMENT, PLAN OF
DISTRIBUTION OF SETTLEMENT
PROCEEDS AND CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.    SUMMARY OF THE SETTLEMENT ..........................................................5

    A.    The Settlement ...........................................................................5

    B.    Attorneys' Fees and Expenses ...................................................6

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE AND SHOULD BE APPROVED BY THE COURT..................6

    A.    The Law Favors and Encourages Settlements .........................6

    B.    The Settlement Is Procedurally Fair .......................................8

    C.    The Second Circuit's Standards Governing the Substantive Fairness of
Class Action Settlements .........................................................9

    D.    The Settlement Satisfies the Second Circuit Criteria for Approval .....................10

        1.    The Complexity, Expense, and Likely Duration of the Litigation
Justifies the Settlement ...............................................10

        2.    The Reaction of the Class to the Settlement .............................12

        3.    The Stage of the Proceedings and Discovery Completed.........................12

        4.    The Risk of Establishing Liability and Damages ....................................14

        5.    The Risks of Maintaining the Class Action Through Trial.......................15

        6.    The Reasonableness of the Settlement in Light of the Best Possible
Recovery and the Attendant Risks of Litigation........................................15

        7.    The Ability of the Defendants to Withstand a Greater Judgment..............17

IV.    The Notice Plan Was the Best Practicable Under the Circumstances ..............................17

V.    CERTIFICATION OF THE CLASS IS APPROPRIATE ...............................19

    A.    The Requirements of Rule 23(a) are Met ..............................................20

        1.    The Numerosity Requirement is Met........................................20

        2.    The Commonality Requirement is Met.....................................21

**Page**

3.    The Typicality Requirement is Met ...................................................23

4.    The Adequacy Requirement is Met ...................................................24

B.    The Requirements of Rule 23(b)(3) are Met ...........................................24

1.    Common Questions of Law or Fact Exist.................................24

2.    The Superiority Requirement is Met.................................................25

VI.    CONCLUSION........................................................................................26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor,*
     521 U.S. 591 (1997)...........................................................................................19, 25

*Aponte v. Comprehensive Health Mgmt.,*
     No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637
     (S.D.N.Y. April 2, 2013)...................................................................................8, 9, 12

*Berger v. Compaq Computer Corp.,*
     257 F.3d 475 (5th Cir. 2001)....................................................................................15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,*
     504 F.3d 229 (2d Cir. 2007)................................................................................20, 21

*Chatelain v. Prudential-Bache Sec., Inc.,*
     805 F. Supp. 209 (S.D.N.Y. 1992) ...........................................................................15

*City of Livonia Employees' Ret. Sys. v. Wyeth,*
     284 F.R.D. 173 (S.D.N.Y. 2012) ..............................................................................23

*Cohen v. J.P. Morgan Chase & Co.,*
     262 F.R.D. 153 (E.D.N.Y. 2009) ..............................................................................25

*Consol. Rail Corp. v. Town of Hyde Park,*
     47 F.3d 473 (2d Cir. 1995)........................................................................................20

*D'Amato v. Deutsche Bank,*
     236 F.3d 78 (2d Cir. 2001)...............................................................................8, 13, 17

*Detroit v. Grinnell Corp.,*
     495 F.2d 448 (2d Cir. 1974)........................................................................... *passim*

*Dietrich v. Bauer,*
     192 F.R.D. 119 (S.D.N.Y. 2000) ..............................................................................23

*Dupler v. Costco Wholesale Corp.,*
     249 F.R.D. 29 (E.D.N.Y. 2008)................................................................................21

*Foe v. Cuomo,*
     700 F. Supp. 107 (E.D.N.Y. 1988) ...........................................................................19

*Gen. Tel. Co. of the Sw. v. Falcon,*
     457 U.S. 147 (1982)...................................................................................................23

**Page**

*Gerber v. Computer Assocs. Int'l, Inc.*,
No. 91-cv-3610, 1995 U.S. Dist. LEXIS 21142
(E.D.N.Y. April 14, 1995) ................................................................................23

*Grunin v. Int'l House of Pancakes, Inc.*,
513 F.2d 114 (8th Cir. 1975) .............................................................................17

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890
(S.D.N.Y. Oct. 24, 2005) ...................................................................................11

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................15

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775, 2012 U.S. Dist. LEXIS 108299
(E.D.N.Y. Aug. 2, 2012) ......................................................................................6

*In re Alloy, Inc., Sec. Litig.*,
No. 03 Civ. 1597, 2004 U.S. Dist. LEXIS 24129
(S.D.N.Y. Dec. 2, 2004).......................................................................................8

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................14

*In re Am. Int'l Group, Inc. Sec. Litig.*,
265 F.R.D. 157 (S.D.N.Y. 2010) ..................................................................23, 24

*In re Am. Int'l. Grp., Inc. Sec. Litig.*,
No. 04 Civ. 8141, 2013 U.S. Dist. LEXIS 131288
(S.D.N.Y. Sept. 11, 2013)....................................................................................9

*In re AOL Time Warner, Inc. Sec. "ERISA" Litig.*,
No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. April 6, 2006)....................................................................................16

*In re Ashanti Goldfields Sec. Litig.*,
No. CV-00-717, 2005 U.S. Dist. LEXIS 28431
(E.D.N.Y. Nov. 15, 2005)....................................................................................7

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................13, 14

**Page**

*In re Blech Sec. Litig.*,
   187 F.R.D. 97 (S.D.N.Y. 1999) ...........................................................................20

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ 7895, 2011 U.S. Dist. LEXIS 53007
   (S.D.N.Y. May 13, 2011)..........................................................................................8

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) .................................................................8, 12, 17

*In re Citigroup Inc. Sec. Litig.*,
   No. 07 Civ 9901, 2013 U.S. Dist. LEXIS 108115
   (S.D.N.Y. Aug. 1, 2013) ....................................................................................10, 11

*In re Excess Value Ins. Coverage Litig.*,
   No. M-21-84, 2004 U.S. Dist. LEXIS 14822
   (S.D.N.Y. July 30, 2004) ........................................................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009).....................................................................................23

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090
   (S.D.N.Y. Sept. 29, 2003) .......................................................................................16

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................7, 8, 9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 93423
   (S.D.N.Y. Dec. 20, 2007)........................................................................................10

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) .............................................................................6

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................13

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) .......................................................................20, 23

Page

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)....................8, 12, 15, 17

*In re Playmobil Antitrust Litig.*,
35 F. Supp. 2d 231 (E.D.N.Y. 1998) ...................................................................................21

*In re Sony SXRD Rear Projection Television Class Action Litig*,
No. 06 Civ 5173, 2008 U.S. Dist. LEXIS 36093
(S.D.N.Y. May 1, 2008)...........................................................................................8, 11, 13

*In re Toys 'R' Us Antitrust Litig.*,
191 F.R.D. 347 (E.D.N.Y. 2000) .........................................................................................19

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695, 2007 U.S. Dist. LEXIS 85629
(S.D.N.Y. Nov. 7, 2007) ............................................................................................ *passim*

*Int'l Union of Elec., Elec., Salaried Mach. & Furniture Workers v. Unisys Corp.*,
858 F. Supp. 1243 (E.D.N.Y. 1994) ....................................................................................10

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)..................................................................................................6

*Krueger v. New York Tel. Co.*,
163 F.R.D. 433 (S.D.N.Y. 1995) .........................................................................................21

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship.*,
168 F.R.D. 451 (E.D.N.Y. 1996) ........................................................................................25

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................17

*Matheson v. T-Bone Rest., LLC*,
No. 09 Civ. 4214, 2011 U.S. Dist. LEXIS 143773
(S.D.N.Y. Dec. 13, 2011)......................................................................................................7

*Michalow v. E. Coast Restoration & Consulting Corp.*,
No. CV 2009-5475, 2011 U.S. Dist. LEXIS 150414
(E.D.N.Y. Nov. 17, 2011) ....................................................................................................21

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ......................................................................................10

**Page**

*Monaco v. Stone*,
   187 F.R.D. 50 (E.D.N.Y. 1999) ............................................................................21

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) .................................................................................24

*Morangelli v. Chemed Corp.*,
   275 F.R.D. 99 (E.D.N.Y. 2011) .............................................................................25

*Neale v. Volvo Cars of North America, LLC*,
   No. 10-cv-4407, 2013 U.S. Dist. LEXIS 43235
   (D.N.J. Mar. 26, 2013) ...........................................................................21, 22, 23

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ...................................................................7, 8, 15, 16

*Passeggio v. Cosmetique Inc.*,
   No. CV-98-1774, 1999 U.S. Dist. LEXIS 7607
   (E.D.N.Y. Apr. 30, 1999) .......................................................................................25

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...............................................................................................17

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982) ...................................................................................13

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001) ...................................................................................23

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983) .....................................................................................19

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...............................................................10, 11

*Taft v. Ackermans*,
   No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144
   (S.D.N.Y. Jan. 31, 2007) ..........................................................................................7

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
   No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608
   (S.D.N.Y. May 14, 2004) ....................................................................................13, 14

Page

*Tiro v. Public House Invs., LLC*,
    No. 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258
    (S.D.N.Y. Sept. 10, 2013) ...........................................................................7, 10, 16

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..................................................................... *passim*

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ...............................................................................7, 19

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................6, 7

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23 ...........................................................................................................19, 20
    Rule 23(a) .............................................................................................................20
    Rule 23(a)(1) ........................................................................................................20
    Rule 23(a)(2) ...................................................................................................21, 22
    Rule 23(a)(3) ........................................................................................................23
    Rule 23(b)(2) ........................................................................................................20
    Rule 23(b)(3) ..............................................................................................1, 20, 24
    Rule 23(e) ..............................................................................................1, 6, 17, 19

## SECONDARY AUTHORITIES

4 Alba Conte, Herbert B. Newberg, Newberg on Class Actions
    §11.45, at 127, 128 (4th ed. 2002) ...............................................................13, 19

Pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, Plaintiff Barbara Marciano ("Plaintiff"),[1] by and through her counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel"), respectfully moves this Court for an order approving the proposed settlement of the above-captioned class action (the "Action"), approving the proposed Plan of Distribution of the settlement proceeds, and certifying a settlement class, each of which this Court preliminarily approved by its Order Preliminarily Approving Settlement and Providing for Notice dated February 19, 2014 (the "Preliminary Approval Order").

## I.   PRELIMINARY STATEMENT

Under the terms of the proposed settlement (the "Settlement"), as set forth in the Settlement Agreement dated January 28, 2014 (the "Settlement Agreement"), in settlement of the Action, Two Million Dollars ($2,000,000) in cash (the "Settlement Amount") will be transferred by or on behalf of Defendants[2] to the Settlement Claims Administrator (as defined in the Settlement Agreement) on behalf of the Class.[3]  These funds constitute the "Settlement Fund" for the Class, which are in exchange for the dismissal of all claims brought against the Defendants in this Action and a full release of claims.  Further, Defendants have agreed to engage in the continuation of certain quality control procedures that were not implemented prior to the Recalls, and will provide coupons to

---

[1]     Capitalized terms were defined in the Settlement Agreement, the accompanying Declaration of Mario Alba Jr. in Support of Plaintiff's Motion for Final Approval of Settlement, Notice, Plan of Distribution of Settlement Proceeds and Class Certification and Lead Counsel's Motion for an Award of Attorneys' Fees (the "Alba Declaration"), and in Lead Counsel's Memorandum of Law in Support of Motion for an Award of Attorneys' Fees ("Fee Brief") filed concurrently herewith.

[2]     "Defendants" refers to Schell & Kampeter, Inc., a Missouri corporation d/b/a Diamond Pet Foods, Diamond Pet Foods, Inc., a Missouri corporation, (collectively, "Diamond") and Costco Wholesale Corporation ("Costco"), a Washington corporation.

[3]     The "Class" has been divided into three sub-classes.  *See* §II, A, below.

customers who purchased pet food products subject to the Recalls and who fed the products to their pets or animals with no resultant ill effects.

The Settlement Fund will be used for the payment of notice and administrative costs and for Court-awarded attorneys' fees.  The remainder after these expenditures, the "Net Settlement Fund," will be distributed to members of the Class who are not otherwise excluded and who validly submit Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants").  Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Proposed Settlement of Class Action (the "Notice").

Lead Counsel respectfully submits that this Settlement is an outstanding recovery for the Class under the circumstances.  Plaintiff pressed her claims for nearly a year-and-a-half, beginning with a thorough investigation of the facts, and were only weeks away from trial when a memorandum of understanding regarding the Settlement was executed.  This Settlement was reached by Lead Counsel, with the support of Plaintiff, only after obtaining, negotiating and litigating discovery disputes, conducting a thorough review of the documents produced by Defendants, engaging in class certification briefing, and participating in a full-day mediation before David Geronemus, a JAMS mediator with almost 20 years' experience, followed by weeks of additional discussions between the parties, assisted by Mr. Geronemus, which ultimately resulted in this Settlement.[4]  Further, Lead Counsel conducted an interview of Mark Schell, the Vice President of Manufacturing at Diamond, to confirm the nature of Plaintiff's claims and reasonableness of the settlement.

---

[4]     A full litigation history, as well as a description of Lead Counsel's tireless efforts over the course of this litigation, are set forth in the Alba Declaration, submitted herewith.

- 2 -

The serious obstacles to recovery faced by Plaintiff underscores the exceptional recovery achieved for the Class.  When viewed in light of the risks that Plaintiff would not prevail at class certification, summary judgment, or trial, the Settlement is a highly favorable result for the Class. Defendants have vigorously defended this litigation from its inception, and there is no reason to believe they would not continue to do so.  In addition to the elimination of risk, the Settlement also saves the Class the considerable expense and delay posed by continued litigation.  As discussed below, and in the accompanying Alba Declaration, the significant risks involved in taking this Action further in litigation, and possibly on to trial, when measured against the benefits of the Settlement, firmly support approval of this Settlement.

On February 19, 2014, the Court entered its Preliminary Approval Order, which directed that a hearing be held on September 15, 2014, to determine the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing").  Pursuant to the Preliminary Approval Order, according to representations made by counsel for Defendant Costco, the Notice was mailed to approximately 189,000 potential members of the Class commencing on March 13, 2014.  Additionally, a Summary Notice was published over *Business Wire* on March 13, 2014 and in *USA Today* on March 17, 2014 (the "Summary Notice").  Further, Gilardi & Co. LLC ("Gilardi"), the Claims Administrator of the Settlement, created an online marketing campaign in an attempt to provide notice to as many Class Members as possible.  This campaign utilizes search engine sponsored links from Bing, Google, and Yahoo!, banner ads through Xaxis, social media advertisement on Facebook, and an outreach campaign through Twitter, in addition to developing and maintaining a Facebook page entitled "Diamond Pet Food Settlement." *See* ¶¶9-10 to the accompanying Declaration of Kenneth Jue in Further Support of Plaintiff's Motion for Final Approval of Settlement, Plan of Distribution of Settlement Proceeds and Class Certification ("Jue Declaration").  Gilardi also posted copies of the

Notice, the Proof of Claim, the Settlement Agreement and the Preliminary Approval Order on the website established for this Settlement at www.DiamondPetFoodsSettlement.com and www.DiamondPetFoodSettlement.com, on March 3, 2014.  Jue Declaration, ¶8.

The Court-approved Notice, attached to the Jue Declaration as Exhibit A, contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including: (i) the manner in which the Net Settlement Fund (as defined above) will be allocated among participating Class Members; (ii) a description of the claims that will be released in the Settlement; (iii) the right and mechanism for Class Members to opt out or exclude themselves from the Class; and (iv) the right and mechanism for Class Members to object to the Settlement.

The reaction of Class Members to the Settlement confirms the reasonableness of Plaintiff's decision to resolve the Action against the Defendants for $2 million.  As of the date of this Memorandum, no objections have been filed to the Settlement or the Plan of Distribution. Therefore, the reaction of the Class strongly supports the inference that the Class agrees that the Settlement and Plan of Distribution are fair, reasonable, and adequate.[5]

Finally, the Class meets the requirements for certification.  Indeed, certification is appropriate because: (i) the proposed Class is so numerous that joinder of all its individual members would be impracticable; (ii) there are questions of law or fact common to the Class; (iii) each Class Member's claim arises from the same course of events and each Class Member makes similar legal arguments to prove the defendant's liability; (iv) Plaintiff's interests are not antagonistic to the interest of other members of the Class and Plaintiff's attorneys are qualified; (v) class-wide issues predominate; and (iv) a class action is the superior method for resolving the controversy.  As such, the Court should approve the Class, for settlement purposes.

---

[5]     If any objections are received, they will be addressed in a reply memorandum, which will be filed and served by August 29, 2014.

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted, the absence of opposition to the Settlement, and the considerable risks and delays associated with continued litigation and trial, Plaintiff and Lead Counsel believe that the Settlement is fair, reasonable and adequate, and provides a substantial result for the Class. Accordingly, Plaintiff respectfully requests that the Court grant final approval of this Settlement.  In addition, the Class should be certified, and the Plan of Distribution should be approved as a fair and reasonable method for distributing the Net Settlement Fund to Class Members.

## II.   SUMMARY OF THE SETTLEMENT

### A.   The Settlement

A $2 million Settlement Fund was created for the following three sub-classes:

Sub-Class I: Individuals who: (1) purchased but never used a Recalled Pet Product, never fed his/her pet or animal the Recalled Product, and the Class Member discarded or retained the product, did not return the product to the dealer or otherwise exchanged the product; or (2) purchased and used a Recalled Pet Product that caused economic damages detailed in Sub-Class II.

Sub-Class II: Individuals who, in addition to having purchased or used a Recalled Pet Product, sustained economic damages as a result of injury or death to animals from their consumption of a Recalled Product.

Sub-Class III: Individuals who purchased pet food products subject to the Recalls and fully utilized the products (*i.e.*, fed the products to their pets or animals) with no resultant ill effects.

In addition, Defendants will employ, for three years from the date of the approval of the Settlement and final judgment, new and improved quality control procedures and therapeutic reforms that had not been implemented prior to the placement of the Recalled Pet Food Products into the market place.  Additionally, Plaintiff has a right to visually inspect defendant Schell & Kampeter, Inc.'s Gaston, South Carolina, manufacturing facility to ensure that the standards are being employed.

As consideration for the settlement of this Action, Defendants have agreed to provide valuable benefits to Class Members.  Indeed, the Settlement serves the dual purpose of providing a cash refund for qualifying Class Members who purchased the Recalled Pet Food and for those who experienced pet illness or death, and forces Diamond to engage in new and improved quality control procedures and therapeutic reforms.  In exchange, Plaintiff has agreed to waive and release all claims arising out of the allegations of the Complaint.

### B.     Attorneys' Fees and Expenses

In addition to the above consideration, the Settlement Agreement provides that the Settlement Fund will be the source for paying: (i) all claims administration expenses; (ii) all expenses associated with the notice program; and (iii) Plaintiff's attorneys' of 20%, as set forth in the accompanying Lead Counsel's Motion for an Award of Attorneys' Fees.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.     The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court.  A court may approve a settlement that is binding on the class only if it determines that the settlement is "'fair, adequate, and reasonable, and not a product of collusion.'"  *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2012 U.S. Dist. LEXIS 108299, at *67 (E.D.N.Y. Aug. 2, 2012) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement."  *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007).  While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect

- 6 -

to class actions. *See Wal-Mart*, 396 F.3d at 116; *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 U.S. Dist. LEXIS 85629, at *16 (S.D.N.Y. Nov. 7, 2007); *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *13-*14 (S.D.N.Y. Jan. 31, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717, 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (finding a general policy favoring the settlement of class action litigations).

To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, No. 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258, at *16 (S.D.N.Y. Sept. 10, 2013); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 U.S. Dist. LEXIS 143773, at *4 (S.D.N.Y. Dec. 13, 2011). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *see also, Veeco*, 2007 U.S. Dist. LEXIS 85629, at *17. As the Second Circuit has stated:

> [T]he role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial."

*Newman v. Stein*, 464 F.2d 689, 691-92 (2d Cir. 1972) (citations omitted).  "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637, at *8 (S.D.N.Y. April 2, 2013).

**B.    The Settlement Is Procedurally Fair**

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013); *In re Sony SXRD Rear Projection Television Class Action Litig*, No. 06 Civ 5173, 2008 U.S. Dist. LEXIS 36093, at *13 (S.D.N.Y. May 1, 2008); *Wal-Mart*, 396 F.3d at 116; *Luxottica Grp.*, 233 F.R.D. at 315; *see also In re Alloy, Inc., Sec. Litig.*, No. 03 Civ. 1597, 2004 U.S. Dist. LEXIS 24129, at *5 (S.D.N.Y. Dec. 2, 2004).  A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations'" and "'plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895, 2011 U.S. Dist. LEXIS 53007, at *10-*11 (S.D.N.Y. May 13, 2011) (court must pay close attention to the negotiating process, ensuring that it was at arm's length, and that class counsel had the requisite experience and ability); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's length negotiations, and following a full-day mediation session before David Geronemus in May 2013 while discovery and briefing on class

certification was ongoing.  That mediation session did not yield a settlement.  The parties continued litigating the Action and prepared for trial while simultaneously discussing settlement.  The Settlement was eventually reached, in principle, in mid-August 2013.  Further, Lead Counsel conducted an interview of Mark Schell, the Vice President of Manufacturing at Diamond to confirm the nature of Plaintiff's claims and reasonableness of the Settlement.  *See Aponte*, 2013 U.S. Dist. LEXIS 47637, at *9 ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process.") (citations omitted); *see also In re Am. Int'l. Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141, 2013 U.S. Dist. LEXIS 131288, at *15 (S.D.N.Y. Sept. 11, 2013).  *See* Alba Declaration, ¶¶30-60.

In addition, no question exists that Lead Counsel was fully informed of the merits and weaknesses of the case by the time the Settlement was consummated, including that  Lead Counsel was equipped with knowledge from an extensive investigation and evaluation of Plaintiff's claims, discussions surrounding class certification, extensive fact discovery, as well as discussions during the mediation.  All of these considerations confirm the reasonableness of the Settlement, and thus, there is little doubt that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

### C.     The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair: whether the proposed settlement is "'fair, reasonable, and adequate.'"  *Luxottica Grp.*, 233 F.R.D. at 310 (citation omitted). The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

- 9 -

> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and] (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). "These factors ought not be applied in a formulaic

manner." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *20. Moreover, all nine factors need not be

satisfied. Instead, the court should look at the totality of these factors in light of the specific

circumstances involved. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02

MDL 1484, 2007 U.S. Dist. LEXIS 93423, at *25-*26 (S.D.N.Y. Dec. 20, 2007); *In re Global

Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004); *see also Int'l Union of Elec.,

Elec., Salaried Mach. & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1265 (E.D.N.Y.

1994) (the court need not apply any "single, inflexible test").

      As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above.

Indeed, this Settlement represents an excellent recovery for the Class, and, in the judgment of Lead

Counsel, there is serious doubt that a more favorable result was possible. As such, the Settlement

clearly warrants this Court's final approval.

      **D.    The Settlement Satisfies the Second Circuit Criteria for Approval**

          **1.    The Complexity, Expense, and Likely Duration of the
                Litigation Justifies the Settlement**

      "The expense and possible duration of the litigation should be considered in evaluating the

reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See

also Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that

continued litigation in this multi-district securities class action would be complex, lengthy, and

expensive, with no guarantee of recovery by the class members.'") (citation omitted). "'The more

complex, expensive, and time consuming the future litigation, the more beneficial settlement

becomes as a matter of efficiency to the parties and to the Court.'" *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901, 2013 U.S. Dist. LEXIS 108115, at *32 (S.D.N.Y. Aug. 1, 2013). Here, Defendants' adamantly asserted numerous defenses that would have contributed to a lengthy and expensive trial if Plaintiff succeeded on her class certification motion.

By reaching a favorable Settlement prior to the completion of the class certification briefing and a probable motion for summary judgment, Plaintiff has avoided significant expense and delay, and ensured a recovery to the Settlement Class. The Court's valuable time and resources required to rule on the eventual motions for class certification, summary judgment and pretrial evidentiary motions for the upcoming trial, have been spared. Significant additional work would be necessary if this case against Defendants were to proceed to trial. A trial on the merits would entail considerable expense, including numerous experts, further pre-trial motions, thousands more hours of attorney time and, given the right to appeal, trial would not necessarily end the litigation. Even if the Class could recover a larger judgment after a trial, the additional delay through post-trial motions and the appellate process could deny the Class any recovery for years, further reducing its value. *See Sony*, 2008 U.S. Dist. LEXIS 36093, at *18; *Strougo*, 258 F. Supp. 2d at 261 ("[E]ven if a . . . class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

- 11 -

The proposed Settlement provides an immediate benefit to Class Members and avoids unnecessary expense and delay.  The Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2.      The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'"  *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Citigroup Bond Litig.*, 296 F.R.D. at 156 ("Minimal objections and few requests for exclusion from class members are evidence that a settlement is fair and adequate.").  In fact, one court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'"  *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *21 (citation omitted).  *See also Aponte*, 2013 U.S. Dist. LEXIS 47637, at *10 ("'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness.") (citations omitted).

Here, in response to a wide-ranging Court-approved notice program – in which approximately 189,000 notices have been mailed to putative Class Members, Summary Notice was published in *USA Today* and over *Business Wire*, and an aggressive online marketing campaign was utilized – not a single Class Member has objected to the Settlement or any of its terms to date.  Thus, the reaction of the Class – those affected by the Settlement – underscores the fairness, reasonableness and adequacy of the Settlement, and provides additional support for approval of the Settlement.

### 3.      The Stage of the Proceedings and Discovery Completed

Consideration of the stage of the proceedings and the extent of discovery completed is "'intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'"  *In re Citigroup Bond Litig.*, 296 F.R.D. at 156.

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte, Herbert B. Newberg, Newberg on Class Actions §11.45, at 127, 128 (4th ed. 2002); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (noting it is not necessary for a court to find parties engaged in extensive discovery; a court must merely find that they engaged in sufficient investigation to enable the court to make intelligent appraisal of the case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato*, 236 F.3d 78 (2d. Cir. 2001); *see also Veeco*, 2007 U.S. Dist. LEXIS 85629, at *22-*23 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *20-*21 (same).

Here, Lead Counsel negotiated a substantial settlement only after, among other things: conducting extensive litigation and fact discovery; litigating issues concerning Defendants' document productions; engaging in class certification briefing; preparing for and participating in a full day of mediation; and conducting weeks of continued settlement negotiations following the mediation.  *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333-34 (E.D.N.Y. 2010) ("Extensive discovery ensures that the parties have had access to sufficient material to evaluate their case and to assess the adequacy of the settlement proposal in light of the strengths and weaknesses of their positions.").  Thus, Lead Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at trial.  *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608, at *10 (S.D.N.Y. May 14, 2004) (finding action had advanced to a stage where parties "'have a clear view

of the strengths and weaknesses of their cases'") (citation omitted); *see also In re Excess Value Ins. Coverage Litig.*, No. M-21-84, 2004 U.S. Dist. LEXIS 14822, at *40 (S.D.N.Y. July 30, 2004) ("The investigation, discovery and motion practice conducted to date provide Plaintiffs with 'sufficient information to make an informed judgment on the reasonableness of the settlement proposal.'").

As such, Lead Counsel had sufficient information to intelligently negotiate the terms of the Settlement that is before the Court for approval. *See In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Therefore, this Court should find that this factor also supports the Settlement.

### 4.     The Risk of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *25; *Austrian & German Bank*, 80 F. Supp. 2d at 177. While Lead Counsel believes that Plaintiff would prevail over Defendants' expected motion for summary judgment and would be able to certify the Class, it is also clear that ultimate success is not assured, and this Settlement, when viewed in light of the risks of proving liability and damages, is undoubtedly fair, adequate, and reasonable.

While Plaintiff firmly maintains that she had viable claims against Defendants, the possibility exists that the Court could have granted Defendants' expected motion for summary judgment had the case not settled. Even if the Court denied a motion for summary judgment, Plaintiff would have had to clear a number of other hurdles, including class certification, possible appeal of class certification decisions, pre-trial motion practice, and trial. A trial in this case would likely be very complicated and challenging for all parties because it would involve class manageability issues and the testimony of scientific experts. The Settlement puts these issues to rest, while at the same time providing valuable economic relief to the Class.

- 14 -

Moreover, assuming that Plaintiff could demonstrate class-wide liability, proving damages would be complex and challenging. The presentation of damages is a complex matter that would require the presentation of expert testimony. A "battle of the experts" would likely ensue in which no party is ever assured to prevail. As a result, proving damages, even assuming the Class prevailed on liability, is difficult. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *29. Accordingly, these risks weigh heavily in favor of approving the Settlement.

**5.      The Risks of Maintaining the Class Action Through Trial**

Had the Settlement not been reached, there is no assurance that Class status would be maintained, because, even if the Class was certified, there is always the risk of decertification. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). The Settlement avoids any uncertainty with respect to these issues.

**6.      The Reasonableness of the Settlement in Light of the Best<br>Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *33. The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693

- 15 -

("[I]n any case there is a range of reasonableness with respect to a settlement."); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *13 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in the full amount of damages claimed).

The Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693); *see also Tiro*, 2013 U.S. Dist. LEXIS 129258, at *29. Here, there is a $2 million settlement fund which will be allocated among Class Members who submit valid claim forms. The $2 million recovery represents approximately 5% of Diamond's annual revenue, which is substantial, considering the products recalled were manufactured within a six month span.

Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road, without any further risk to the Class. *See In re AOL Time Warner, Inc. Sec. "ERISA" Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *44 (S.D.N.Y. April 6, 2006) (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"); *see also Tiro*, 2013 U.S. Dist. LEXIS 129258, at *30 ("Moreover, when settlement assures immediate payment of substantial amounts to class members 'even if it means sacrificing "'speculative payment of a hypothetically larger amount years down the road'"'" settlement is reasonable under this factor."). This case has been pending for nearly two years, and was expected to last several additional years had the Settlement not been reached and an appeal been pursued after trial. In light of the complex legal and factual issues typically present in consumer class actions and the unpredictability of a lengthy and complex trial and the appellate process that would most likely follow, the fairness of this

- 16 -

substantial Settlement is clearly apparent.  *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

### 7.  The Ability of the Defendants to Withstand a Greater Judgment

Finally, Lead Counsel does not dispute the viability of the Defendants' financial resources and has no reason to believe that Defendants could not withstand a judgment in excess of the Settlement amount, if obtained.  Courts, however, generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and in fact, the ability of a defendant to pay potentially more money does not render a settlement unreasonable.  *See Citigroup Bond Litig.*, 296 F.R.D. at 157; *D'Amato*, 236 F.3d at 86; *PaineWeber*, 171 F.R.D. at 129.

Accordingly, Lead Counsel submits that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

## IV.  The Notice Plan Was the Best Practicable Under the Circumstances

The Class Members are entitled to reasonable notice of the Settlement and the opportunity to be heard.  *See* Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process."  *Grunin v. Int'l House of Pancakes, Inc.*, 513 F.2d 114, 121 (8th Cir. 1975).  The Notice Plan here fully comports with the requirements of Rule 23(e), as well as due process requirements.  As provided for in the Preliminary Approval Order, the Class Members were fully apprised of the existence of the Action, the Settlement, and the information needed to make informed decisions about their participation in the case.

Notice was provided in multiple ways.  As described in the declaration of Kenneth Jue, Case Manager at Gilardi, a website (http://www.DiamondPetFoodsSettlement.com or

- 17 -

http://www.DiamondPetFoodSettlement.com) was established to provide information about the Settlement, allow Class Members to download copies of the Notice and Claim Form (which Class Members were required to submit for the cash refund), and provide the means by which Class Members could request additional information.  Copies of the Notice and Claim Form are attached to the Jue Declaration as Exhibits A and B.

The notice describes, in clear and non-complicated language, the terms of the Settlement, explains the claims and defenses of the lawsuit, provides instructions for Class Members to exclude themselves from the Settlement or to object to any part of the Settlement, provides detailed information about the final Settlement approval hearing, and provides contact information for the Claims Administrator, Lead Counsel and counsel for Defendants, among other things.  The Notice was mailed to approximately 189,000 potential members of the Class commencing on March 13, 2014.  The Summary Notice (attached as Exhibit D to the Jue Declaration) was also published in *USA Today* and over *Business Wire*.  Further, an online marketing campaign was utilized in an attempt to provide notice to as many Class Members as possible.  *See* Exhibit C to the Jue Declaration.  This campaign uses search engine sponsored links from Bing, Google, and Yahoo!, banner ads through Xaxis, social media advertisement on Facebook, and an outreach campaign through Twitter, in addition to developing and maintaining a Facebook page entitled "Diamond Pet Food Settlement."  *See* Jue Declaration, ¶¶9-10.

By all accounts, the Notice Plan, consisting of the Internet-based Notice, mailing notice and nationwide publication in a nationally circulated newspaper, has in fact resulted in Class Members receiving actual notice of the Settlement.  There is nothing to suggest otherwise.  Lead Counsel certainly believes that the notice program provides the best practicable notice under the circumstances and comports with due process standards.

The standard for the adequacy of a settlement notice in a class action under the Due Process clause or the Federal Rules is measured by reasonableness. *See Wal-Mart*, 396 F.3d at 113-14 (citing *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983)). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id*. at 114 (quoting *Weinberger*, 698 F.2d at 70). Notice is "adequate if it may be understood by the average class member." Newberg §11:53, at 167.

The Notice Plan here is consistent with notice plans used successfully in other approved class actions. *See, e.g.*, *In re Toys 'R' Us Antitrust Litig.*, 191 F.R.D. 347, 350-51 (E.D.N.Y. 2000). The information presented is clear and comprehensive, and is written in simple terms. The Notices "fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of persons entitled to participate in it," and apprise affected Settlement Class Members of their options with regard to the Settlement, thus satisfying due process. *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988). Therefore, this Court should rule that the Notice Plan satisfies the requirements of Rule 23.

## V.      CERTIFICATION OF THE CLASS IS APPROPRIATE

The inquiry addressing whether to certify a settlement class is not the same as the inquiry addressing whether to certify a litigation class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The "dominant concern" when determining whether to certify a settlement class is "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621. Here, all of the applicable requirements

of Rule 23 are satisfied. Thus, as described in more detail below, the Court should certify the Settlement Class for purposes of the Settlement.

Rule 23 requires the Court to engage in a two-step analysis in order to determine whether it should certify a class action for settlement purposes. First, the Court must determine whether a plaintiff has satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a). If a plaintiff satisfies these prerequisites, the Court must then determine whether the requirements of Rule 23(b)(2) or 23(b)(3) are met. *See* Fed. R. Civ. P. 23(a) Advisory Committee's Note. Rule 23(b)(3) permits the maintenance of a class action if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Applying this two-step analysis, the Court should certify the Action as a class action for settlement purposes.

### A. The Requirements of Rule 23(a) are Met

### 1. The Numerosity Requirement is Met

Class certification is appropriate where the proposed class is so numerous that joinder of all its individual members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "The numerosity requirement of Rule 23(a)(1) does not mandate that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). A plaintiff may rely on reasonable inferences drawn from available facts to estimate the size of the proposed class. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999). As the Second Circuit has held, "[n]umerosity is presumed when a class consists of forty members or more." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

- 20 -

Diamond produces, on average, 260,000 tons (approximately 2.8 million bags) of Pet Food per year and has annual revenues of $39.2 million.  The Recalled Pet Food was distributed in approximately 40 states.  As such, the parties estimate there are at least hundreds, if not thousands, of members of the proposed class.  According, the numerosity requirement is easily met.

## 2.   The Commonality Requirement is Met

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This commonality requirement is met "if plaintiffs' grievances share a common question of law or of fact." *Cent. States Se. & Sw. Areas Health & Welfare Fund*, 504 F.3d at 245.  The disputed issue of law or fact must "occupy essentially the same degree of centrality to the named Plaintiffs' claim as to that of other members of the proposed class." *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995).  One single common issue of law will satisfy the commonality requirement.  *See Michalow v. E. Coast Restoration & Consulting Corp.*, No. CV 2009-5475, 2011 U.S. Dist. LEXIS 150414, at *6 (E.D.N.Y. Nov. 17, 2011); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).  A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims. . . ." *Monaco*, 187 F.R.D. at 61.  A court may find a common issue of law even though there exists "'some factual variation among class members' specific grievances. . . .'" *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (*citing In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998)).

Recently, in *Neale v. Volvo Cars of North America, LLC*, No. 10-cv-4407, 2013 U.S. Dist. LEXIS 43235 (D.N.J. Mar. 26, 2013), the court certified a class of plaintiffs who alleged that a uniform design defect existed in the sunroof drainage systems of six Volvo models.  In finding that the plaintiff established commonality, the court stated "Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that 'depend upon a common contention' that is 'of such a

- 21 -

nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stoke [sic].'"  *Id.* at *24-*25.  Further, the court found that there were numerous common questions, including "whether the sunroof drainage systems in the Class Vehicles are defective. . . ." *Id.* at *25-*26.  Finally, the court noted that commonality was established through a uniform defect. *Id.* at *25.

Plaintiff's complaint in this case raises several questions of law and fact that are common between members of the proposed class.  Included in these questions is, "whether Defendants manufactured, marketed and/or sold Pet Food that was tainted by the Salmonella virus," which is akin to the common question regarding whether the sunroofs were defective, as raised in *Neale*. Further, Plaintiff has alleged a uniform defect – the tainting of the Recalled Pet Food with Salmonella.

Other common questions include: (i) whether Defendants manufactured, marketed and/or sold Pet Food that was tainted by the Salmonella virus; (ii) whether Defendants advertised, represented, or held the Pet Food out as a product that was safe for consumption by consumers' pets; (iii) whether Defendants expressly warranted the Pet Food as safe for consumption by consumers' pets; (iv) whether Defendants implicitly warranted the Pet Food as safe for consumption by consumers' pets; (v) whether Defendants intended or foresaw that Plaintiff, Class Members, or others would feed the Pet Food to their pets; (vi) whether Defendants were negligent in manufacturing and/or processing the Pet Food; (vii) whether using the Pet Food as a reasonable consumer would – to feed domesticated house pets – would result in loss, injury, or damages to the Class; (viii) the measure and amount of damages suffered by Plaintiff and the Class; (ix) whether Defendants' negligence proximately caused damages to Plaintiff and the Class; and (x) whether Defendants were unjustly enriched by the conduct complained of.

- 22 -

Because Plaintiff has demonstrated that there is at least one question of law and fact in common between Class Members, she will satisfy this element.

### 3. The Typicality Requirement is Met

To demonstrate "typicality under Rule 23(a)(3), the party seeking certification must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Am. Int'l Group, Inc. Sec. Litig.*, 265 F.R.D. 157, 168 (S.D.N.Y. 2010) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). To meet the typicality requirement, "'[t]he claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'"" *City of Livonia Employees' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012) (*citing Gerber v. Computer Assocs. Int'l, Inc.*, No. 91-cv-3610, 1995 U.S. Dist. LEXIS 21142, at *8-*9 (E.D.N.Y. April 14, 1995)).

As the Supreme Court has observed, the commonality and typicality requirements "tend to merge. Both serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)

The claims here satisfy the typicality requirement because they "'arise[] from the same course of events, and each class member [would make] similar legal arguments to prove the defendant's liability.'" *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000); *NYSE Specialists*, 260 F.R.D. at 70 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). Similarly, in *Neale*, the court found typicality is established "[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant." *Neale*, 2013 U.S. Dist. LEXIS 43235, at *27. Additionally, the relief sought by each member of the class is similar – reimbursement of the purchase of the pet food and recovery for injuries sustained by the pets. As a

- 23 -

result of the purchase, Plaintiff and the other members of the Class have been injured by the same course of conduct by Defendants.  As shown above, typicality has been established.

### 4.      The Adequacy Requirement is Met

"'Adequacy entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Am. Int'l Group*, 265 F.R.D. at 172.

First, Plaintiff has no interest antagonistic to absent Class Members.  Plaintiff, like each absent Class Member, has a strong interest in proving Defendants' common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress.  Additionally, Plaintiff and members of the Class seek to ensure that other pet owners do not find themselves in a similar situation in the future.  As Plaintiff proves her own claims, she will also prove the claims of the numerous Class Members.  Further, Lead Counsel has already proved its ability to adequately, vigorously, and competently prosecute this action, since its appointment as interim lead counsel.  As such, Plaintiff has clearly established that the adequacy requirement has been established.

### B.      The Requirements of Rule 23(b)(3) are Met

### 1.      Common Questions of Law or Fact Exist

In determining whether common questions predominate, the key inquiry is whether the issue of liability is common to members of the class.  In essence, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  "Stated differently, if adjudicating the class representatives' claims 'will effectively establish a right of recovery for all other class members without the need to

- 24 -

inquire into each individual's circumstances' or 'if the same evidence will permit each class member

to make a prima facie showing,' then the test is met." *Morangelli v. Chemed Corp.*, 275 F.R.D. 99,

105 (E.D.N.Y. 2011).

"The predominance requirement is met when the defendant's wrongful acts involve common

practices and/or standardized documents." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 159

(E.D.N.Y. 2009). Additionally, "[p]redominance is a test readily met in certain cases alleging

consumer or securities fraud or violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625.

Regarding the predominance of common questions of law or fact, Plaintiff has provided numerous

common issues in her initial complaint, and would rely on the same documents as others attempting

to pursue similar claims against Defendants. Therefore, Plaintiff has established the predominance

of common questions of law or fact.

### 2.     The Superiority Requirement is Met

"The policy at the very core of the class action mechanism is to overcome the problem that

small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his

or her rights. A class action solves this problem by aggregating the relatively paltry potential

recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods.*, 521

U.S. at 617 (internal citations omitted). When a plaintiff class is comprised of consumers, such as

this one, who are not likely to bring suit on their own, a class action is the superior method for

resolving the controversy. *See Passeggio v. Cosmetique Inc.*, No. CV-98-1774, 1999 U.S. Dist.

LEXIS 7607, at *16-*19 (E.D.N.Y. Apr. 30, 1999); *Labbate-D'Alauro v. GC Servs. Ltd. P'ship.*,

168 F.R.D. 451, 458-59 (E.D.N.Y. 1996).

Plaintiff seeks to represent a class of consumers covering approximately 40 states who

purchased 11 different brands of Pet Food manufactured by Diamond that were tainted by the same

strain of Salmonella. Individual litigation would be expensive compared to the damages sustained

on an individual basis.  A class action, in a consumer case such as this, will enable the class to seek a meaningful means of redress to compensate them for their injuries that they may not be able to seek on their own.  As such, Plaintiff has established that a class action is the superior method to litigate this action.

## VI.    CONCLUSION

The Settlement reached in this Action is an outstanding result.  For the foregoing reasons, the $2 million cash Settlement and Plan of Distribution of the settlement proceeds are fair, reasonable and adequate, and should be granted the Court's final approval.  Finally, the Class should be certified for settlement purposes.

DATED:  April 14, 2014                ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                      SAMUEL H. RUDMAN
                                      MARIO ALBA JR.
                                      MARK S. REICH
                                      WILLIAM J. GEDDISH


                                              */s/ Mario Alba Jr.*
                                      MARIO ALBA JR.

                                      58 South Service Road, Suite 200
                                      Melville, NY  11747
                                      Telephone:  631/367-7100
                                      631/367-1173 (fax)
                                      srudman@rgrdlaw.com
                                      malba@rgrdlaw.com
                                      mreich@rgrdlaw.com
                                      wgeddish@rgrdlaw.com

                                      *Lead Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2014, I authorized the electronic filing of the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

email addresses denoted on the attached Electronic Mail Notification List.


*/s/ Mario Alba Jr.*
MARIO ALBA JR.

# Mailing Information for a Case 2:12-cv-02708-SJF-AKT

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Robert D. Balin**
  robbalin@dwt.com,NYCDocket@dwt.com

- **Gerard Benvenuto**
  gbenvenuto@traublieberman.com

- **William John Geddish**
  wgeddish@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Mark S. Reich**
  mreich@csgrr.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)